IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DETRIC LESTER<br>CHARLIE BURT, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | CIVIL ACTION FILE NO.<br>1:11-CV-1410-TCB |
| vs. | )<br>) | |
| BELK, INC. | ) | |
| Defendant. | ) | |
| _____ | ) | |

## BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Now comes the Plaintiff, by and through counsel, and submits this her Brief in Opposition to Summary Judgment, and shows the Court as follows.

## STANDARD OF REVIEW

In considering a motion for summary judgment, the court must "view... all facts and any reasonable inferences therefrom in the light most favorable to the non-moving party." See **Hale v. Tallapoosa County, 50 F.3d 1579, 1581 (11th Cir.1995), Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).** The Court will only grant summary judgment when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Generally, the movant must demonstrate that no genuine issue of

1

material fact exists to be decided at trial by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." *Celotex Corp. v. Catrett*, 447 U.S. 317, 324 (1986). The burden on the moving party may be discharged by "showing" that there is an absence of evidence to support the non-moving party's case. Id. For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence "sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994)(quoting Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116-17 (11th Cir. 1993).

Where the movant would bear the burden at trial, it must demonstrate the absence of an issue of material fact with regard to every element essential to its claim on the legal issue in question. Id. at 1115. The movant "must show affirmatively the absence of a genuine issue of material fact" and "support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial. Id. (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438). On summary judgment, "[i]f there is conflict between the plaintiff's and the defendant's allegations or in the evidence, the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor." *Molina*

***v. Merritt & Furman Ins. Agency, 207 F.3d 1351, 1356 (11th Cir. 2000)*** (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986)).

"Summary judgment cannot be sustained merely because the judge believes that the party against whom it is entered is unlikely to prevail on the merits after a trial: the responsibility of the district judge on a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try the issues himself via affidavits." ***Jaroslawicz v. Seedman, 528 F. 2d 727 (2nd Cir.,1975).***

## STATEMENT OF FACTS

On the date of the incident herein, Plaintiff sat in a chair in Defendant's store, which promptly and inexplicably collapsed, causing her to fall to the floor and suffer serious injury. Defendants claim to have an inspection procedure, but by their own testimony, the so-called procedure they have described is merely the cleaning and vacuuming of the floor. Defendant's Area Sales Manager described this procedure in her deposition:

      Page     22

12   "   Q    (By Mr. Jones)  Prior to Ms. Lester's fall,

13   is there any activity done, are there any efforts

14   made, towards checking these chairs, making sure the

15   screws aren't loose in them or anything of that

16  nature?

17     A   They clean the department morning and night

18  during -- throughout the day so the chairs are moved

19  constantly.  So if anything was lose, they would

20  notify us or take it off the floor.

21     Q   Who is "they" that cleans the department?

22     A   The associates that are in that area that

23  day.

24     Q   Now, these are the sales associates?

25     A   Correct.

                    23

1      Q   So what kind of cleaning do they do?

2      A   Vacuuming, dusting.

3      Q   Okay.  That's in addition to the

4   housekeeper?

5      A   Correct.

6      Q   Because before I asked you who did the

7   cleaning and you said the housekeeper.

8          So other than things that they would notice

 9   when they vacuum and clean the floor and move the

10   chairs around, there is no particular activity to

11   actually inspect the chairs?

12      A   No.

13           MR. KOHLER:  Object to the form.

14      Q   (By Mr. Jones)  Prior to Ms. Lester's

15   accident, incident, whatever you wish to call it,

16   there's no activity engaged in to check the stability

17   of the chairs other than the cleaning activity that

18   you've talked about?

19           MR. KOHLER:  Object to the form.

20           THE WITNESS:  No."

Therefore, although Defendants' affidavits make much of so-called "inspections" of the chairs, there is, by their own admission, absolutely nothing done to inspect these chairs.  At best, Defendants have shown that they look at the chairs as they move through the area during the sales day.  There is no inspection whatsoever.

   The paucity of the so-called inspection procedure comes into sharper focus when we consider Defendant's description of it in their response to interrogatories. In Answer to Interrogatory Question 17 (Exhibit 2 to the Deposition of Anita

Grimes), Ms. Grimes, who verified the answer to this interrogatory, stated as follows: "Defendant responds that, around the time of the incident on August 31, 2009, Belk sales associates would clean and inspect the shoe department every night when they were closing up the store.  This cleaning and inspection would have included moving and inspecting the chairs in the shoe department to clean and vacuum around them. If any problems had been noted with the chairs during this cleaning and inspection, it was (and still is) Belk's policy to report problems with equipment to the Assistant Store Manager."

However during her deposition, Ms. Grimes said as follows:

> Page  14
>
> 23    " Q    Is there a position called assistant store
>
> 24   manager?
>
> 25      A   No."

Thus we are asked to believe that an inspection procedure exists manned by personnel who do not exist.  Defendant's employee Kristin Baker also stated in her affidavit that problems are reported to the assistant store manager (Affidavit of Kristin Baker, para. 4), in language identical to the language used to answer the interrogatory ( "It was (and still is) Belk's policy to report any defective equipment to an Assistant Store Manager.")  Baker further states that the chairs are inspected

during a "floor sweep." Once again, it is Ms. Grimes who explains what a floor sweep really is:

Deposition of Anita Grimes              Page  15

17  " Q   You're sure she came later.

18        What is a floor sweep?

19     A   It's when we -- the associates check the

20  floors and make sure there's nothing that's hazardous

21  for slips and falls.

22     Q   Is part of the floor of the store carpeted?

23     A   Yes.

24     Q   Is part of it not carpeted?

25     A   Yes.

                16

1     Q   Some kind of bare floor?

2     A   Um-hum."

Thus we see that a floor sweep is a routine (and commendable) practice to make sure that Defendant's patrons will not slip and fall on any hazardous materials on the floors and carpets. Defendants have shown that they have a inspection procedure for checking the floors, not for checking the chairs.  In this case,

however, Plaintiff was injured while attempting to sit in a chair. There was no inspection procedure for chairs.

## STATEMENT OF LAW

"The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitee[] to an unreasonable risk of harm. Recovery is allowed only when the proprietor had knowledge of the hazard and [284 Ga. App. 358] the invitee did not."9 *Petrosky v. Embry Crossing Condo. Assoc., Inc.*, **284 Ga. App. 354, 357-8, 643 S.E.2d 855 (2007).**

Under Georgia law, constructive knowledge on the part of the Defendant may be inferred when there is evidence that the owner lacked a reasonable inspection procedure or failed to follow and carry out a reasonable inspection procedure at the time of the incident**.** *Straughter v. J.H. Harvey*, **232 Ga. App. 29, 500 S.E.2d 353 (1998),** *Ingles Markets Inc. v. Martin et al.,* **236 Ga. App. 810, 513 S.E.2d 536 (1999).**

Although Defendant claims to have had an inspection program here, their own testimony has contradicted that claim. Their "procedure" involves reporting to an employee which they admit does not exist.  Their "procedure" is nothing more than the glances one might make at the chairs while vacuuming or cleaning.  The

floor sweeps which they claim involve checking the chairs have nothing to do with any activity designed to check the stability of the chairs.(Deposition of Anita Grimes p. 23, ln. 1-10.)  There is "no particular activity" by the sales associates to inspect the chairs.   (Deposition of Anita Grimes p. 23, ln. 8.)

Georgia law is clear that where there is no regular inspection procedure, the plaintiff need not show how long the hazard was in existence.  ***Avery  v.  Cleveland Avenue Motel, Inc*. 239 Ga.App. 644, at 645-646,  521 S.E.2d 668 (1999). Blocker  v.  Wal-mart Stores, Inc. 287 Ga. App. 588, 651 S.E.2d 845 (2007).**

Certainly the Plaintiff had no knowledge of any defective condition of the chair in which she attempted to sit. A genuine issue of material fact has been introduced as to whether Defendant, through their lack of an inspection procedure, had constructive knowledge of the defective chair condition that caused Plaintiff's injuries.

Therefore, Defendant's Motion for Summary Judgment should be denied.

        Dated:     this 21st Day of November, 2011.

        Respectfully Submitted,

_____
Genet M. Hopewell
Georgia Bar No.  493920

_____
E. Duane Jones

Georgia Bar No. 399910

Attorneys for Plaintiffs Detric Lester and Charlie Burt

Burroughs Johnson Hopewell Coleman
4262 Clausell Court, Suite a
Decatur, Georgia 30035
(404) 289-2244
Fax (404) 289-2888

**CERTIFICATE OF COMPLIANCE**

In accordance with LR 7.1(D), NDGa, the undersigned counsel hereby certifies that the foregoing **BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** has been prepared using Times New Roman (14 point), one of the fonts specified in LR 5.1(C), NDGa.

This 21st day of November, 2011.

/s/
_____
E. Duane Jones
Georgia Bar No. 399910

Attorneys for Plaintiffs Detric Lester and Charlie Burt
Burroughs Johnson Hopewell Coleman
4262 Clausell Court, Suite a
Decatur, Georgia 30035
(404) 289-2244
Fax (404) 289-2888

## CERTIFICATE OF SERVICE

Plaintiffs, by and through counsel, hereby certifies on this date it caused the foregoing **BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to be electronically filed with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

Michael P. Kohler, Georgia Bar No. 427727
Laura Ashby, Georgia Bar No. 595907

1170 Peachtree Street, N.E., Suite 800 Atlanta, Georgia 30309-7706

This 21st day of November, 2011.

            **/s/ E. Duane Jones**

        *Attorney for Plaintiffs*